# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD COWARD, | ) |
| Plaintiff, | ) |
| vs. | ) 2:09-cv-01143-RCJ-GWF |
| FIRST MAGNUS FINANCIAL CORP. et al., | ) ORDER |
| Defendants. | ) |

Plaintiff Richard Coward has sued Defendants First Magnus Financial Corp. ("First Magnus"), Countrywide Home Loans, Inc. ("Countrywide"), Recontrust Co. ("Recontrust"), Equity Title of Nevada ("Equity Title"), Mortgage Electronic Registration Systems ("MERS"), First American National Default Title Insurance Co. ("First American"), and Title Court Service, Inc. ("Title Court"), (collectively, "Defendants"), on multiple causes of action related to the foreclosure of his mortgage. Pending before the Court are several motions. For the reasons below, the Court GRANTS Plaintiff leave to amend *sua sponte* in accordance with the Amended Complaint (#1-3); GRANTS Defendants' Motions to Dismiss (#9, #17) the Amended Complaint with prejudice as to all causes of action except the fourth, fifth, and seventh; GRANTS Defendants' Motion for Summary Judgment (#9, #17) as to the remaining causes of action; and DENIES Plaintiff's Motion for Joinder of Additional Plaintiff (#26) and Plaintiff's Motion for Default Judgment (#31).

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Richard Coward has sued Defendants on unclear causes of action, seeking an unclear measure of relief. What can be safely inferred from the Complaint is that Coward's home

(the address of which is not identified in the Complaint) has been, or is in danger of being, foreclosed on, and that he believes Defendants have something to do with this. At least one Defendant (First American) disclaims any connection to the foreclosure and denies that this Court even has personal jurisdiction over it. Other Defendants (Countrywide, Recontrust, and Equity Title) have filed motions to dismiss or in the alternative for summary judgment. Title Court has also filed an Answer. Defendant has not filed proof of service as to MERS, but MERS has joined Countrywide and Recontrust's Motion to Dismiss or for Summary Judgment (#9). (#22).

There is an attempt to amend the complaint in the record, (#1-3 at 1), and Defendants respond in places to this "Amended Complaint," but this "Amended Complaint" cannot be considered by the Court without granting leave to amend. It was apparently filed by Plaintiff in this Court on May 26, 2009, before the Court had jurisdiction over the case by virtue of removal under 28 U.S.C. § 1441, which did not occur until June 25, 2009. (#1 at 1). A plaintiff cannot amend a complaint via a filing in a court that does not have jurisdiction, and a plaintiff cannot remove a case already filed in state court to federal court. Only a defendant may remove a case to federal court. This defect is not cured by the fact that Defendants attached the attempted amendment to the Petition for Removal along with the original Complaint. Therefore, the Complaint has not been properly amended in either state or federal court. Responsive pleadings and answers have been filed, so Plaintiff must request leave to amend at this stage.

The Court, however, grants leave to amend *sua sponte*, in accordance with the wrongly filed "Amended Complaint," so that it may address the causes of action therein and more efficiently dispose of the case. The Amended Complaint ("AC") is much clearer than the Complaint. It claims for the first time that Coward purchased his home at 1372 Montezuma Ct., Las Vegas, NV 89119 on or about July 2, 2007 for $270,000. (#1-3 at ¶ 14). Later, Coward claims that he stopped making payments on or about June 1, 2007, (*Id.* at ¶ 38), which must be incorrect, since he had not yet received the loan by his own admission. The facts in the surrounding paragraphs indicate that this

must be a typographical error, with the correct date being June 1, 2008. Coward received a notice of default on September 26, 2008, (*Id.* at ¶ 39), and a notice of trustee sale on January 15, 2008. (*Id.* at ¶ 40). Here again, facts in the surrounding paragraphs indicate that the date of the notice of trustee sale shown here must be a typographical error, with the correct date being January 15, 2009. The AC lists nine causes of action: (1) RICO; (2) Truth in Lending Act ("TILA"); (3) Home Ownership Equity Protection Act ("HOEPA"); (4) Fraud and Deceit; (5); Breach of Contract; (6) Predatory Lending Under "Civil Code" §§ 2945.3–2945.6; (7) Wrongful Foreclosure; (8) Breach of Good Faith and Fair Dealing; and (9) Injunctive Relief.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The rule cuts both ways. Although a short, plain statement of the case showing a right to relief is sufficient, it is also necessary. Although there is some allowance for extraneous material, a long, rambling, confusing, and conclusory diatribe is too much, and a court may in its discretion dismiss such a complaint under Rule 8(e). *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court

will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." FED. R. CIV. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B.    Rule 56(c)**

The Federal Rules of Civil Procedure provide for summary adjudication when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24 (1986).

In a summary judgment posture, the Court must consider the parties' respective burdens. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve

1  the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324.

When considering a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c).  At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**C.     Rule 55**

Federal Rule of Civil Procedure 55(b) permits a default judgment following the entry of default by the clerk under Rule 55(a).  The choice as to whether a default judgment should be entered is at the sole discretion of the trial court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A defendant's default alone does not entitle a plaintiff to a court-ordered judgment. *See id.*  Instead, the Ninth Circuit has determined that a court should look at seven discretionary factors before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  These factors are: (1) the possibility of prejudice to the plaintiff,;(2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due

1  to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure
2  favoring decisions on the merits. *Id*.

3  Once the court clerk enters a default, the well-pleaded factual allegations of the complaint
4  are taken as true, except for those allegations relating to damages. *Televideo Sys., Inc. v. Heidenthal*,
5  826 F.2d 915, 917–18 (9th Cir. 1987). The plaintiff is required to prove all damages sought in the
6  complaint, and those damages may not be "different in kind [or] exceed in amount that prayed for
7  in the [complaint]." Fed. R. Civ. P. 54(c). If sufficiently documented and detailed, damages claims
8  may be fixed by an accounting, declarations, or affidavits. *See James v. Frame*, 6 F.3d 307, 310 (5th
9  Cir. 1993).

10 **D.    Rules 19 and 20(a)(1)**

11 Rule 20(a)(1) allows a person to join in an action together as plaintiffs when "they assert any
12 right to relief jointly, severally, or in the alternative with respect to or arising out of the same
13 transaction, occurrence, or series of transactions or occurrences; and any question of law or fact
14 common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)–(B). A plaintiff may
15 not join another plaintiff unilaterally. Plaintiffs must join of their own accord. Involuntary plaintiffs
16 are only properly joined under Rule 19 if complete relief cannot be accorded among existing parties
17 without joinder of that plaintiff.

18 **III.   ANALYSIS**

19 **A.    Dismissal Under Rule 12(b)(6)**

20 The Court could order Plaintiff to make a more definite statement that complies with Rule
21 8(a). The complaint fails to identify any causes of action or delineate any prayer for relief. It simply
22 does not give defendants notice about what causes of action to defend. The Complaint begins with
23 the title "HOLDER IN DUE COURSE," and in the following paragraph alludes confusingly to Ohio
24 cases, Nevada statutes, and two Defendants. Coward then makes a statement that he does not desire
25 to be a party to fraud. In the next few paragraphs, Coward cites to cases concerning standing to

foreclose, claiming that Defendants Countrywide and Recontrust have no interest in his promissory note. These claims continue repetitively for several pages. Then Coward claims that "BANKS CANNOT LEND CREDIT," an oft-stated claim in similar actions, with no legal merit in the present context, that almost certainly originated on the Internet. The Complaint then contains a short passage on the law of contracts and a "WARNING" that no party had better attempt to offer into evidence a copy of the promissory note, but only an original. Coward then complains that Defendant First American is operating illegally in Nevada without having required authorization from the Secretary of State. Nowhere in the Complaint does Coward identify which entities, if any, have foreclosed or threatened to foreclose on any property he owns or why that party's foreclosure entitles him to relief. Taken as a whole, the Complaint is a generalized grievance about the mortgage industry that probably does not even support Article III standing. However, the Court grants leave to amend *sua sponte*, in accordance with the wrongly filed "Amended Complaint," so that it may address the causes of action therein and more quickly dispose of the case.

**1.  RICO**

RICO claims arising from garden-variety foreclosure actions are frivolous stalling actions that abuse the court system. *See, e.g.*, *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249–50 (2d Cir. 2004); *Tropf v. Fidelity Nat'l Title Co.*, 289 F.3d 929, 939–41 (6th Cir. 2002) (affirming a district court's monetary and injunctive sanctions against an attorney filing RICO and similar federal claims over a garden-variety foreclosure). The present case is only different in that Plaintiff is appearing *pro se*. The Court grants the Motions to Dismiss as to the First Cause of Action with prejudice.

**2.  TILA**

Plaintiff claims violations of TILA by Defendants, claiming that they failed to provide him with required disclosures. First, the one-year limitations period for damages under TILA has run. "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

1  15 U.S.C. § 1640(e). The alleged violations occurred on or about July 2, 2007 (#1-3 at ¶ 14), and
2  the Complaint was not filed until January 23, 2009. (#1 at 4).

3  Second, the remedy of rescission is available for three years under TILA § 125(f), 15 U.S.C.
4  § 1635(f), but only where a borrower is willing and able to tender the balance on the promissory
5  note, which clearly is not the case here. *See Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th
6  Cir. 2003); *LaGrone v. Johnson*, 534 F.2d 1360, 1392 (9th Cir. 1974). Moreover, § 1635 "does not
7  apply to . . . a residential mortgage transaction as defined in section 1602(w) of this title." § 1635(e)
8  and (e)(1). "The term 'residential mortgage transaction' means a transaction in which a mortgage,
9  deed of trust, purchase money security interest arising under an installment sales contract or
10 equivalent consensual security interest is created or retained against the consumer's dwelling to
11 finance the acquisition or initial construction of such dwelling." § 1602(w). In other words, the right
12 to rescind under TILA exists only if the Property was not itself the security for the loan obtained to
13 purchase the Property. *Compare In re Schweizer*, 354 B.R. 272 (Bankr. D. Idaho 2006) (holding that
14 the TILA rescission remedy did not apply where borrowers used funds to acquire a primary
15 residence), *with De Jesus-Serrano v. Sana Inv. Mortgage Bankers, Inc.*, 552 F. Supp. 2d 191 (D.P.R.
16 2007) (holding that the TILA rescission remedy did apply where borrowers encumbered a second
17 property in order to obtain financing for the first). Here, Plaintiff's loan was obtained in order to
18 finance the purchase of the same residence that was used as collateral. Therefore, the TILA
19 rescission remedy does not apply here. The Court grants the Motions to Dismiss as to the Second
20 Cause of Action with prejudice.

21 **3.    HOEPA**

22 HOEPA was simply an amendment to TILA. *See* Home Ownership and Equity Protection
23 Act of 1994, Pub. L. 103-325, 108 Stat. 2190. Because the TILA claim has been examined under
24 the statutes as amended by HOEPA and been found to be time-barred as to damages and inapplicable
25

as to rescission, the "HOEPA" claim is superfluous. The Court grants the Motions to Dismiss as to the Third Cause of Action with prejudice.

### 4. Fraud and Deceit

The elements of common law fraud in Nevada are:

1. A false representation made by the defendant;
2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);
3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;
4. Plaintiff's justifiable reliance upon the misrepresentation; and
5. Damage to the plaintiff resulting from such reliance.

*Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992). Furthermore, under Rule 9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b). A Plaintiff must plead facts such as "he bought a house from defendant, that the defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill . . . ." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1995) (en banc)).

Plaintiff has failed to plead an action for fraud. He claims that Defendant made a false representation and that he has been damaged. (#14 at ¶¶ 62, 65). But the rest of the cause of action consists of bits and pieces of other theories, such as RICO and promissory estoppel. He has not pled elements two through four of fraud. Because the parties have attached evidence to the pleadings, (*See, e.g.*, #1-3, Exs. A–E), the Court will treat the present Motions as motions for summary judgment. The AC does not provide a scintilla of evidence concerning elements two or three of a fraud action (mens rea), and the Court grants the Motions for Summary Judgment on the Fourth Cause of Action.

### 5. Breach of Contract

Plaintiff has not pled a breach of contract action. He claims only that Defendants did not intend to perform when they entered into the contract with him. The claim is entirely conclusory,

and in any case does not claim an actual breach. Even if it were true that Defendants never intended to perform when they entered into the agreement, there is no indication they did not actually perform. Plaintiff seems to admit Defendants performed by providing him the requested loan. A refusal to modify an agreement is not "refusal to perform." If anything, Plaintiff's argument admits that he is the party who failed to perform. The Court grants the Motions for Summary Judgment on the Fifth Cause of Action.

**6.      Predatory Lending Under [California] Civil Code §§ 2945.3–2945.6**

Plaintiff claims predatory lending under the California Civil Code. Only if the law of California applies to the present cause of action should this cause of action survive a motion to dismiss. A federal court applies the substantive law of the state where it sits and federal procedural rules. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Choice of law rules are substantive for *Erie* purposes. *Klaxon Co. v. Stentor Elec. Mfg*, 313 U.S. 487, 496 (1941). Therefore, the choice of law rules of the Nevada apply to the present case.

Nevada recently adopted the "most significant relationship" ("MSR") test of the Restatement (Second) of the Conflict of Laws § 145 for tort actions, unless a more specific section of the Restatement applies. *Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. County of Clark*, 134 P.3d 111, 116 (Nev. 2006). The MSR test of § 145 will therefore apply unless the tort at issue is directly spoken to by another section of the Restatement. Finally, Nevada determines choice of law by cause of action, not via the doctrine of dépeçage, under which choice of law on each separate issue within each cause of action is determined separately. *See Lucarelli ex rel. Taylor Estate v. DVA Rental Healthcare, Inc.*, No. 08-0406, 2008 WL 5586615, at *3 (W.D. La. Oct. 24, 2008) (citing *id.* at 119)). Therefore, the Court should examine the present cause of action as a whole to determine if the Restatement addresses it specifically. If not, the MSR test of § 145 will apply.

Section 148 applies to torts involving fraud or misrepresentation. The relevant provisions of the California Civil Code cover wrongful foreclosure. The Court need not decide whether to apply § 145 or § 148, because the application of neither section can possibly result in any law other than the law of Nevada controlling the present incidents. Plaintiff has not pled the slightest connection of the incidents at issue with the State of California and has admitted that the events at issue took place in Nevada. Therefore, the Court grants the Motions to Dismiss as to the Sixth Cause of Action with prejudice.

**7.     Wrongful Foreclosure**

Plaintiff claims that some (unidentified) Defendant has wrongfully foreclosed by "failing to follow procedure for recoding deed, which gives no right to title for real property." (#1-3 at ¶ 72). "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed . . . ." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983). Furthermore, the only state apparently to have directly addressed the issue, Missouri, holds a foreclosure void when a party attempts to foreclose without holding title to the underlying promissory note. *Graham v. Oliver*, 659 S.W.2d 601, 603 (Mo. App. 1983) (citing *Cobe v. Lovan*, 92 S.W. 93 (Mo. 1906) (holding that such a foreclosure sale is void)). There is no Nevada case law on point, but this is a commonsense rule. A person without the right to enforce an obligation cannot have recourse to repossess collateral even if he possesses a security instrument, because he has not suffered a default. Moreover, with mortgages a contrary rule would result in the odd situation that the holder of a promissory note and the respective holder of a deed of trust, when not the same person, or when the latter was not the agent or "nominee"[1] of the former, would potentially be

---

[1] Further examination of the role of a nominee is in order, as the present glut of mortgage-related lawsuits has brought this into controversy. Black's Law Dictionary lists three definitions for "nominee." Black's Law Dictionary 1076 (8th ed. 2004). The second definition is relevant in the present context. "2. A person designated to act in place of another, [usually] in a very

competing creditors as to the underlying property when the former had not given its right to elect foreclosure to the latter. The law avoids this situation by holding that, "the mortgage goes with the note." *Rodney v. Arizona Bank*, 836 P.2d 434, 436 (Ariz. App. 1992) (quoting *Hill v. Favour*, 52 Ariz. 561, 568 (1938)).

Plaintiff appears to be confused who initiated the foreclosure. Plaintiff's claim is that some entity initiated foreclosure without possessing any interest in the underlying debt via the promissory note or without being a nominee of such party, who is entitled to foreclose. Viewed in the light most favorable to Plaintiff, the pleadings indicate that some party is in the process of foreclosing, or has by now foreclosed, on the property, and that it may not have possessed any interest in the underlying debt or been the nominee of such party. The Seventh Cause of Action therefore makes out a cognizable claim.

Defendants are entitled to summary judgment, however. They have provided the following

---

limited way." *Id.* In short, a nominee is an agent with limited powers, akin to a special power of attorney. This applies to cases such as the present one, where an entity (often MERS) is nominated on a deed of trust by the holder of a promissory note as its agent, with the limited role of administering the deed of trust on the holder's behalf. Part of the confusion seems to result from the fact that the scope of this role is not often stated clearly on the deed of trust, but is simply taken for granted by those in the industry. The real trouble begins when the nominee then substitutes the original trustee on the deed of trust, which it has the right to do as the holder's nominee. The substituted trustee then forecloses when the mortgagor/trustor defaults on the promissory note. The mortgagor/trustor then complains that the foreclosing trustee is acting wrongly because it does not itself hold the promissory note, or, alternately, because it was not the original trustee on the deed of trust. Often the argument the mortgagor/trustor makes is not clear, and a court is left to sort out the mess. But so long as the note is in default and the foreclosing trustee is either the original trustee or has been properly substituted by the holder of the note or the holder's nominee, there is no defect in foreclosure. Another possible defect is when a note has been negotiated, and there is no evidence that the foreclosing trustee is the agent of the current holder, or that the foreclosing trustee was substituted by a nominee of the current holder. The Court need not decide this question in the present case, because there is no evidence of negotiation. Even where there has been negotiation, it could be the case that as a matter of law a new holder ratifies a prior holder's assignment of nominees and trustees on a corresponding deed of trust (or any security instrument generally) by silence. This result would make sense because, as already noted, "the mortgage goes with the note." *Rodney*, 836 P.2d at 436.

evidence that Plaintiff has not countered: that Plaintiff's mortgage loan was obtained from First Magnus via promissory note (#10 at 23–26) and secured by a deed of trust (#17 at 16), that First Magnus assigned Equity Title as trustee and MERS as its nominee on the accompanying deed of trust (#17 at 16–17), that MERS (First Magnus's nominee on the deed of trust) later substituted Recontrust as trustee (#17 at 42), and that Recontrust gave Plaintiff notice of the trustee's sale (#17 at 39–42). Plaintiff has admitted default and has provided no evidence at all that First Magnus no longer holds the promissory note at issue, which is the only possible remaining fact pattern under which summary judgment would perhaps not be appropriate. Plaintiff provides no evidence to this effect, but simply hopes against hope that perhaps First Magnus or its successors in interest negotiated the note to a party that did not itself assign or ratify Recontrust as trustee (or MERS as nominee before MERS substituted Recontrust as trustee), and that the Court believes this is relevant. There being no indication of this, the Court grants the Motions for Summary Judgment as to the Seventh Cause of Action.

**8.     Breach of the Covenant of Good Faith and Fair Dealing**

There is an implied covenant of good faith and fair dealing inherent in every contract whereby no party will do anything that will destroy or injure the right of another party to receive the fruits of the contract. 17A Am. Jur. 2d *Contracts* § 370 (2009).

Plaintiff has not made any claim of fact that if true would indicate that Defendants did anything to wrongfully injure Plaintiff's rights to receive the benefit of the bargain entered into. Rather, he complains that he made a bad bargain and that Defendants refused to alter it to his benefit. Although Plaintiff puts forth Defendant's superior bargaining position and alleged refusal to provide him with information as a violation of the implied covenant of good faith and fair dealing, because Plaintiff claims this tort occurred as part of the bargaining process itself, it is essentially a claim of procedural unconscionability, not for a violation of the implied covenant of good faith and fair dealing. Procedural unconscionability arises when a party lacks meaningful opportunity to

bargain because of unequal bargaining power. *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004). This is the crux of Plaintiff's claim, and there is no indication that Plaintiff was unable to bargain with any Defendants. Plaintiff admits he "requested a loan with zero down payment." (#1-3 at ¶ 17). He received one. A person who receives a quarter-million dollar loan to purchase a home with no down payment has hardly been taken advantage of. Plaintiff then made approximately nine monthly payments before deciding on behalf of all parties that he would continue to live in the house for free. (*Id.* at ¶¶ 33, 38).

Because the facts viewed in a light most favorable to Plaintiff do not state a cause of action, nor can these claims be cured by amendment without contradicting what Plaintiff has already pleaded, the Court grants the Motions to Dismiss as to the Eighth Cause of Action with prejudice.

**9.     Injunctive Relief**

Federal Rule of Civil Procedure 65(a) allows a court to issue a preliminary injunction on notice to an adverse party. The Ninth Circuit employs two sets of criteria for evaluating a request for preliminary injunctive relief. Under the "traditional test," the movant must establish: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005) (citation omitted). As to the second element, the Supreme Court recently clarified that a plaintiff seeking an injunction must demonstrate that irreparable harm is likely, not just possible. *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 375–76 (2008). Under the "alternative test," the plaintiff can meet its burden by showing "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Beardslee*, 395 F.3d at 1067 (citation and internal quotation marks omitted). "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Id.* (citations omitted).

1   Because, as explained above, Plaintiff has no hope of succeeding on the merits of his claims,
2   the Court grants the Motions to Dismiss as to the Ninth Cause of Action with prejudice.

3   **B.**     **Default Judgment Under Rule 55.**

4   Coward has attached to his Motion for Default Judgment (#31) a copy of his application to
5   the Clerk for such judgment under Rule 55(a). (*Id.* at 3). However, the application is not signed by
6   the Clerk, and the record does not indicate any default judgment has been entered. Whether Coward
7   must apply to the Clerk or to the Court for entry of a default judgment is controlled by whether he
8   is seeking a sum certain. If so, he must apply to the Clerk. Fed. R. Civ. P. 55(b)(1). If not, he must
9   apply to the Court. Fed. R. Civ. P. 55(b)(2). Coward is seeking both legal and equitable relief.
10  Because, however, none of his causes of action have merit, and no party is in default that has been
11  properly served, the Court denies the Motion. (#31).

12  **C.**     **Motion to Join Party Under Rule 20(a)(1)**

13  Coward attempts to join Leah Coward as a plaintiff. (#26). Plaintiff does not describe his
14  relationship to Leah Coward, but presumably it is his wife or other relative living at the Property.
15  Coward claims that joinder is appropriate because of a quitclaim deed allegedly filed in the Clark
16  County Recorder's Office on July 9, 2009, although Coward does not identify by whom. In any
17  case, Leah Coward must choose to join the action of her own accord under Rule 20. Coward cannot
18  force her to sue Defendants along with him under Rule 19, because there is no indication that
19  whatever relief Coward is seeking cannot be had if she is not joined. Therefore, the Court denies
20  the Motion, which is moot in any case. (#26).

21                                   **CONCLUSION**

22  IT IS HEREBY ORDERED that the Court GRANTS Plaintiff leave to amend *sua sponte*
23  in accordance with the Amended Complaint (#1-3); Defendants' Motions to Dismiss (#9, #17)
24  the Amended Complaint is GRANTED with prejudice as to all causes of action except the
25  fourth, fifth, and seventh; Defendants' Motion for Summary Judgment (#9, #17) is GRANTED

as to the remaining causes of action; and Plaintiff's Motion for Joinder of Additional Plaintiff (#26) and Plaintiff's Motion for Default Judgment (#31) are DENIED.

DATED:   October 14, 2009

_____
Robert C. Jones
United States District Judge